**IT IS ORDERED as set forth below:**

**Date: April 10, 2017**

_____
**James R. Sacca
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 15-64860-JRS |
| | ) | |
| RACHEL CAPELOTO GUILLEN, | ) | CHAPTER 13 |
| | ) | |
| **Debtor.** | ) | |

**ORDER APROVING MODIFICATION OF CONFIRMED CHAPTER 13 PLAN**

The issue before the Court is whether it should approve a proposed modification of a confirmed chapter 13 plan to decrease the pool to unsecured creditors by the amount of the attorney's fees incurred to create the basis for the pool, or whether it should deny the modification because the amount of the pool in the confirmed plan is res judicata or the decrease in the amount of the pool violates the best interests of creditors test.

The Debtor filed for Chapter 13 on August 4, 2015. Her spouse is not a debtor in this case. They own a house as joint tenants with a right of survivorship. The Debtor valued the house at $221,800 on her Schedule of Assets and neither the Chapter 13 trustee nor any other

1

party in interest disputed that valuation. The Debtor scheduled a first lien on the house in favor of Central Mortgage Company in the amount of $116,277[1] and a disputed junior lien in favor of Wells Fargo Bank for about $50,000.

At the hearing on the approval of the modification, about five months after the plan was confirmed, the parties explained the hypothetical Chapter 7 liquidation analyses they used during the case. The first analysis, which assumed the validity of the disputed lien of Wells Fargo, was as follows: based on the value of the house of $221,800 and the entire potential secured debt of $166,277, and assuming 10% costs of sale in a Chapter 7 case ($22,180), there would only be net proceeds of $33,343, which is less than either the $43,000 of exemptions the Debtor and her spouse could take in the house or, alternatively, if half of the net proceeds were distributed to the non-debtor spouse ($16,671.50), the balance is less than the exemption provided to the Debtor under Georgia law of $21,500, so there would be no distribution to unsecured creditors in a Chapter 7 case.

This is contrasted with the hypothetical Chapter 7 liquidation analysis the parties explained to the Court at the hearing on the approval of the modification assuming the disputed lien of Wells Fargo lien was avoided: based on the value of the house of $221,800 and valid secured debt of only $116,277, and assuming 10% costs of sale in a Chapter 7 case of $22,180, it would leave net proceeds of $83,343, to which the non-debtor spouse would be entitled to half ($41,671.20), and then from which the Debtor would be entitled to an exemption under Georgia law of $21,500, leaving a balance for distribution in a Chapter 7 case of $20,171.50.

Accordingly, when Debtor filed her plan concurrently with her petition, the plan proposed a pool to unsecured creditors of $20,172. The Debtor is a below medium income debtor

---

[1] Central Mortgage ultimately filed a proof of claim for $115,820.

2

for purposes of calculating her applicable commitment period, so the term of her plan is a minimum of 36 months as opposed to 60 months.  The plan provided to pay base attorney's fees of $4,900 plus fees at an hourly rate for any adversary proceedings.  The plan originally proposed to pay $425 per month to the Chapter 13 trustee, but was subsequently increased to $450 per month.  The Plan disputed the perfection of Wells Fargo's lien and provided that it be avoided.  It was based on this alleged lack of perfection of the mortgage that the plan provided for the $20,172 pool to unsecured creditors.[2]

      Wells Fargo, however, did not consent to the avoidance of the lien so the Debtor filed an adversary proceeding to determine the validity, extent or priority of the lien on October 20, 2015. Debtor alleged that she, alone, borrowed $50,000 from Wells Fargo on a credit line secured by the house and she, alone, executed a deed to secure debt on the house to secure that loan.  The Debtor asserted that because the house was titled in the name of both spouses as joint tenants with rights of survivorship, the Debtor, alone, could not grant a deed to secure debt on the house, so the lien was void and the claim of Wells Fargo was only an unsecured claim.  Wells Fargo filed an Answer on December 3, 2015 denying the relief sought.  In the interim, the Debtor's Chapter 13 plan came on for confirmation on November 4, 2015, but the hearing was continued until December 23, 2015, and then again until February 10, 2016, March 9, 2016, May 24, 2016 and July 19, 2016, while the adversary proceeding was litigated.  On January 22, 2016, Wells Fargo filed a formal objection to the plan [Doc. 23] contesting the Debtor's claim that its lien was not valid.

---

[2] Scheduled unsecured creditors totaled about $27,500 and that is about the same amount as the proof of claims that were filed.  In addition to that amount, if the Wells Fargo lien was avoided, its $50,000 claim would be treated as an unsecured claim and share in the unsecured pool with those other unsecured claims.

3

Discovery was conducted in the Adversary Proceeding. Debtor filed a motion for summary judgment on June 10, 2016. Before a response was filed, the parties entered into a Consent Judgment on July 14, 2016 avoiding the lien of Wells Fargo, which paved the way for the Debtor's plan to be confirmed at the confirmation hearing a mere five days later. Accordingly, almost a year after the case was filed, the plan was confirmed at the next confirmation hearing on July 19, 2016, which plan still provided for a pool to unsecured creditors of $20,172. At the confirmation hearing, because there were no further objections to the plan, the plan was confirmed by announcement at the call of the calendar, so no evidence was taken by the Court nor were any findings of fact made at that time or in the order confirming the plan other than that cause existed to confirm the plan because it complied with the requirements of Section 1325 of the Bankruptcy Code. [Doc. 27]

Thereafter, on November 18, 2016, the Debtor's attorney filed a fee application for $8,295 for the legal work he performed avoiding the lien of Wells Fargo. On December 7, 2016, the Debtor, through her attorney, filed a modification of the plan to provide for payment of the attorney's fees, if allowed, through the plan by reducing the pool to the unsecured creditors by the amount of the fees allowed. [Doc. 33] At a hearing on December 20, 2016, the fee application was approved, with the order being entered on December 28, 2016. In the interim, on December 27, 2016, the Chapter 13 Trustee objected to the proposed modification of the plan to reduce the pool to unsecured creditors from $20,172 to $11,877 because unsecured creditors would receive less than they would in a Chapter 7 case in violation of Section 1325(a)(4), as applicable under Section 1329(b)(1), and because of the res judicata effect of the confirmed plan with respect to the amount of the pool in relation to the best interest of creditors test. [Doc. 35]

4

Section 1325(a)(4) requires that a plan provide

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date.

The Court heard argument from the parties at the hearing on the approval of the modification on January 5, 2017 and announced that it would approve the modification because (a) the attorney's fees were not included in the hypothetical costs of sale so the modification did not violate the best interest of creditors test and (b) if the modification were not approved, this below median income Debtor on a fixed income would either have to pay an additional $8,295 during the life of the plan which was already at 60 months or the Debtor's attorney would have to forgo payment of the reasonable fee for his services that produced the entire pool to unsecured creditors, neither of which outcomes were acceptable or appropriate based on the facts of this case. At the request of the Chapter 13 Trustee after the Court announced its ruling, the Court advised that this Order explaining its ruling would follow. The Court will address each of the Chapter 13 Trustee's arguments below.

A Chapter 13 debtor may modify a confirmed plan only under the limited circumstances and pursuant to the terms of Section 1329 of the Bankruptcy Code. This section provides, in pertinent part:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to -
>
> (1) increase or reduce the amount of the payments on claims of a particular class provided for by the plan; …

5

> (b) (1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.[3]

The Debtor's requested modification proposes to reduce the amount of payments on the claims of a particular class, so it is permissible within the scope of Section 1329(a)(1) under the facts of this case. In the Chapter 13 Trustee's objection and arguments at the hearing against the approval of the modification, the Chapter 13 Trustee contended that (a) the modification is effectively double-dipping by giving the Debtor credit twice for the attorney's fees incurred by Debtor's counsel to avoid the lien because they were already included in the 10% costs of sale ($22,180) taken into account in the hypothetical liquidation test used to calculate the pool to unsecured creditors so it did not satisfy the requirement of Section 1325(a)(4), which is a requirement that all modifications must satisfy pursuant to Section 1329(b)(1); and (b) the plan is res judicata as to the $20,172 pool being the necessary amount to satisfy the best interest of creditors test found in Section 1325(a)(4).

---

[3] Section 1329(a) and (b) of the Bankruptcy Code provide:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to -
>
> (1) increase or reduce the amount of the payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments;
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
>
> (4) reduce the amount to be paid under the plan by the actual amount expended by the debtor to purchase health insurance ...
>
> (b) (1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

6

### A. Is the Confirmed Plan Res Judicata with Respect to the Amount of the Pool to Unsecured Creditors?

Although the Chapter 13 Trustee may feel the parties had an understanding that the amount of the pool to unsecured creditors in the original plan was the amount necessary to satisfy the best interest of creditors test, the Court heard no evidence, received and approved no stipulation or understanding, and made no finding that the amount necessary to satisfy the best interest of creditors test was $20,172.  The only finding the Court made in connection with the confirmation of the plan was the general finding that the plan satisfied the requirements for confirmation under Chapter 13, which requirements include that the plan would pay to unsecured creditors at least what they would receive in a Chapter 7 case. This means that the pool proposed by the Debtor in the plan had to be equal to or greater than that amount, whatever that amount may have had to have been. Consequently, this also means that the amount necessary to satisfy the requirement could actually be less than the amount of the pool proposed by the Debtor in the plan. For example, Chapter 13 debtors often propose to pay more to unsecured creditors in their plans than those creditors would receive in a Chapter 7 case. Furthermore, after considering the explanation of how the pool was determined in this case, the Court does not believe the proper methodology was used because of the presence of a non-debtor co-owner of the house and, as set forth in the last section of this Order, the Court finds that the proposed pool in both the original plan and the proposed modification exceeded the amount necessary to satisfy the best interest of creditors test. Accordingly, the amount of the pool to unsecured creditors in this case is not res judicata as to the amount that was necessary for this Debtor to pay to satisfy the best interest of creditors test because the only finding the Court made that was res judicata in connection with this issue is that the amount of the pool in the plan satisfied the test as opposed to actually finding that a specific amount was necessary to satisfy the test.

Even assuming *arguendo* that the confirmation of the plan here involved a determination that the amount of the proposed pool in the original plan was the amount necessary at the time of confirmation to satisfy the best interest of creditors test, it is generally recognized that Congress created an exception to the finality of an order confirming a Chapter 13 plan through Section 1329 of the Bankruptcy Code. *In re Witkowski*, 16 F.3d 739 (7th Cir. 1994); *Barbosa v. Soloman*, 235 F.3d 31 (1st Cir. 2000)*; In re Meza*, 467 F.3d 874 (5th Cir. 2006). Reducing the amount of payments on the claims of a particular class, which the Debtor is proposing to do here, is clearly one of the exceptions set out in Section 1329(a)(1). "The common-law principle of res judicata, however, does not apply 'when a statutory purpose to the contrary is evident.' " *Witkowski*, 16 F.3d at 744, quoting *Astoria Federal Sav. and Loan Ass'n v. Solimino,* 501 U.S. 104, ----, 111 S.Ct. 2166, 2170, 115 L.Ed.2d 96 (1991), quoting *Isbrandtsen Co. v. Johnson,* 343 U.S. 779, 783, 72 S.Ct. 1011, 1014, 96 L.Ed. 1294 (1952). What this means is that the doctrine of res judicata does not apply if the plain language of a statute makes it clear that it does not apply. *Witkowski*, 16 F.3d at 745. The plain language of Section 1329 is one such instance where it is clear that res judicata does not apply.

Unlike the First, Fifth and Seventh Circuits cited above, the Fourth Circuit Court of Appeals has placed additional limits on that exception not found on the face of the statute, that being that a confirmed plan is res judicata on the matters with the scope of Section 1329 unless the moving party shows a substantial and unanticipated change in a debtor's financial circumstances. *In re Arnold*, 869 F.2d. 240 (4th Cir. 1989) and *In re Murphy*, 474 F.3d 143 (4th Cir. 2007). Because an argument can be made that the attorney's fees for avoiding the lien

8

should have been anticipated at the time of confirmation, the Court will address this dispute between the Fourth Circuit and the majority of other circuits who have considered this issue.[4]

The Fourth Circuit in *Arnold* acknowledged that "§ 1329(a) does not explicitly state what justifies such a modification," but it concluded that "it is well-settled that a substantial change in the debtor's financial condition after confirmation may warrant a change in the level of payments." *Arnold*, 869 F.2d at 241. From there, the Fourth Circuit jumped to the conclusion that "the doctrine of res judicata bars an increase in the amount of monthly payments only where there have been no unanticipated, substantial changes in the debtor's financial situation." *Id.* at 243. The Fourth Circuit doubled down on this position in *In re Murphy* where it stated

> when a bankruptcy court is faced with a motion for modification pursuant to §§ 1329(a)(1) or (a)(2), the bankruptcy court must first determine if the debtor experienced a substantial and unanticipated change in his post-confirmation financial condition. This inquiry will inform the bankruptcy court on the question of whether the doctrine of *res judicata* prevents modification of the confirmed plan. If the change in the debtor's financial condition was either insubstantial or anticipated, or both, the doctrine of *res judicata* will prevent the modification of the confirmed plan. However, if the debtor experienced both a substantial and unanticipated change in his post-confirmation financial condition, then the bankruptcy court can proceed to inquire whether the proposed modification is limited to the circumstances provided by § 1329(a). If the proposed modification meets one of the circumstances listed in § 1329(a), then the bankruptcy court can turn to the question of whether the proposed modification complies with § 1329(b)(1).

*In re Murphy*, 474 F.3d 143, 150 (4th Cir. 2007)

---

[4] With respect to this argument, the Court notes that the Adversary Proceeding was settled a mere five days before an upcoming confirmation hearing and the bankruptcy case had been pending for almost a year, the confirmation hearing had already been continued five times, and the Chapter 13 Trustee was holding funds for distribution upon confirmation so Debtor's counsel decided to proceed to get the case confirmed and deal with the fees and a plan modification later rather than continue the confirmation of the plan yet again to wait on the preparation of a fee application, the hearing on same, and another confirmation hearing with an amended plan.  Perhaps in hindsight it would have been better to delay confirmation again to avoid this contested matter.  But it would be an unfortunate and unnecessary result if the Court had to deny this modification based on *Arnold* and *Murphy*.  This Court finds that the modification here was in good faith under the circumstances of this case and should be permitted under Section 1329 for the reasons set forth herein.

This Court disagrees with the holdings in *Arnold* and *Murphy* with respect to a Chapter 13 plan being res judicata as to a proposed modification that is not based on a substantial and unanticipated change in the debtor's financial circumstances. First, the circumstances justifying the modification, such as whether there is a substantial and unanticipated change of circumstances or just a change in circumstances, goes to whether the modification should be approved, not whether it is res judicata. Second, the case before this Court is an excellent example of why that approach is overly rigid and lacks the very flexibility that Congress implemented in Section 1329 to address the circumstances of a case. The Court will analyze Section 1329, the principle of res judicata and the case law to set forth the basis for its decision.

When Sections 1327 and 1329 of the Bankruptcy Code are read together, it is clear that Congress did not intend for res judicata to be applied to a confirmed Chapter 13 plan in certain specific circumstances. *Witkowski*, 16 F.3d at 745. On the one hand, Section 1327 provides that "the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327. On the other hand, "Congress, however, also provided a mechanism to change the binding effect of § 1327 when it passed § 1329 to allow for modifications." *Id.* Therefore, "[i]f the drafters of the Bankruptcy Code intended for a confirmation hearing to have res judicata effect, there would be little or no reason for Section 1329." *Id.*, quoting *In re Williams,* 108 B.R. 119, 123 (Bankr.N.D.Miss.1989). It has also been noted that Congress chose not to make a "change in circumstance" an express requirement to modify a confirmed plan under Section 1329, which express requirement it did insert in Section 1328(b)(1) in cases involving hardship discharges. *Id.* All of this together illustrates that Congress did not intend for res judicata to apply to modification of plans under Section 1329.

10

*Barbosa*, 235 F.3d at 40, citing *Witkowski*, 16 F.3d at 745 ("Moreover, the statutory framework is clear in allowing post-confirmation modifications, a feature that is incongruent with the application of the doctrine of *res judicata*.")[5]

In *In re Murphy*, the subsequent Fourth Circuit case which reaffirmed and explained the scope of *Arnold*, the Fourth Circuit stressed that its holding "ensures that confirmation orders will be accorded the necessary degree of finality, preventing parties from seeking to modify plans when minor and anticipated changes in the debtor's financial condition take place." *In re Murphy*, 474 F.3d 143, 149 (4th Cir. 2007), citing *In re Butler,* 174 B.R. 44, 47

---

[5] Although this Court believes the language of Section 1329 is clear and unambiguous on this issue such that analysis of the legislative history is not necessary, *Barbosa* noted that the legislative history of this section was not conclusive, "and if anything, it supports the inference that *res judicata* should not be applied." 235 F.3d at 40. In discussing the legislative history, *Barbosa* stated:

> Section 1329(a) was amended in 1984 to provide standing to the trustee and the holders of unsecured claims to move to amend the confirmed bankruptcy repayment plan. Consumer Credit Amendments, Section 319, Title III of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"), Pub.L. No. 98-353; 8 *Collier on Bankruptcy* ¶ 1329.03 (Lawrence P. King, chief ed., 15th ed.2000). Prior to the amendment, only the debtor was authorized to request a modification of the plan. *Id.*; *see also* William L. Norton Jr., *Bankruptcy Law and Practice 2d, Bankruptcy Code* 1270, eds.' comm. (1998-1999). However, Congress saw fit to allow the trustee and holders of unsecured claims to seek an amendment to the confirmed plan in order to carry the ability-to-pay standard forward in time, allowing upward or downward adjustment of plan payments in response to changes in the debtor's financial circumstances which affect his/her ability to make payments. *See Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the Committee on the Judiciary, House of Representatives,* 97th Cong., 1st and 2nd Sess. 22-23 (1981-1982).
>
> There was an indication at the Congressional Oversight Hearings on Personal Bankruptcy that the standing conferred to the trustee and the unsecured creditors would serve to accommodate any changes in the financial circumstances of the debtor (either adversely or favorably), which substantially affect his ability to make future payments under the plan. *Oversight Hearings, supra,* at 215-216, 221-222 (1981-1982) (statement of the Hon. Conrad K. Cyr, Bankruptcy Judge for the District of Maine, speaking on behalf of the National Bankruptcy Conference and the National Conference of Bankruptcy Judges); Arnold & Porter, *BANKR84,* Hearings(21). However, the reference to a substantial change was *never* accompanied by the requirement that the change be unanticipated. Moreover, the legislative history indicates that the application of the doctrine of *res judicata* was never discussed, considered, or contemplated by Congress. *Oversight Hearings, supra*.

> *Id*. at 40, 41.

(Bankr.M.D.N.C.1994) ("As a matter of sound public policy, as well as appropriate judicial economy, there is no reason why either a creditor or a debtor should be permitted to relitigate issues which were decided in the confirmation order or which were available at the time of confirmation but not raised by the parties. Absent this salutary policy, there is no readily available brake on the filing of motions under § 1329 by creditors and debtors simply hoping to produce a more favorable plan based on the same facts presented at the original confirmation hearing.")

This Court does not believe that a judicially imposed doctrine of res judicata contrary to a clear statutory scheme is necessary to ensure the proper finality due a Chapter 13 plan confirmation order.[6] *Witkowski* addressed this issue, stating that "[e]ven if there were some justification for concern, courts cannot re-write statutes. Judges do not 'have free rein to impose rules of preclusion, as a matter of policy, when the interpretation of a statute is at hand.'" 16 F.3d at 745, quoting *Astoria,* 501 U.S. at ----, 111 S.Ct. at 2169; *Barbosa*, 235 F.3d at 38 ("These are doctrines of judicial origin.") This Court agrees with *Witkowski* that the concern expressed in *Murphy* is "unfounded." *Id*. The specific criteria for modification of a plan set forth in Section 1329 provide several protections to mitigate these concerns. *Id*.; *Barbosa*, 235 F.3d at 39. First, modifications under Section 1329 are only allowed in four limited circumstances to: (1) increase or reduce the amount of the payments on claims of a particular class provided for by the plan; (2) extend or reduce the time for such payments; (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan and (4) reduce the amount to be paid under the plan by the actual amount expended by the debtor to purchase health insurance. 11 U.S.C. § 1329(a).

---

[6] The Court's experience is that the imposition of such threshold requirements would not fulfill this purpose but would merely change the litigation to be about whether the threshold requirements were met, such as in this case, with one party saying the change in circumstances was substantial and unanticipated and another saying it was not.

12

Second, a modified plan must meet the requirements of Sections 1322(a), 1322(b), 1325(a) and 1323(c). 11 U.S.C. § 1329(b)(1). Third, as a more specific subset of the aforementioned statues, a modification must be proposed in good faith to comply with Section 1325(a)(3). Finally, courts are not required to approve all proposed modifications and practical experience shows that not all modifications are approved. *Witkowski*, 16 F.3d at 746, citing *West v. Costen,* 826 F.2d 1376, 1379 (4th Cir.1987); *Barbosa*, 235 F.3d. at 39; *In re Meeks,* 237 B.R. 856, 859-60 (Bankr.M.D.Fla.1999)("Chapter 13 debtors [cannot] simply modify their plans willy nilly.")

Although the ability to modify a plan pursuant to Section 1329 demonstrates that the doctrine of res judicata does not apply to the type of modifications set forth therein and the clear and unambiguous language of the section does not contain any requirement for a change in circumstances, it does not mean that a court may not consider whether a change in circumstances occurred in determining whether to modify a plan. *Witkowski*, 16 F.3d at 746. It only means that "§ 1329 and the doctrine of res judicata do not require a minimal showing of a change in circumstances." *Id.*, citing *In re Powers,* 140 B.R. 476, 478 (Bankr.N.D.Ill.1992); *In re Perkins,* 111 B.R. 671, 673 (Bankr.M.D.Tenn.1990). *See, e.g., In re Larson,* 122 B.R. 417, 420 (no minimal showing to modify a Chapter 12 bankruptcy plan). Furthermore, *Barbosa* quoted with approval that the bankruptcy judge in that case noted that (a) "motions to modify cannot be used to circumvent the appeals process for those creditors who have failed to object to confirmation of a Chapter 13 plan or whose objections to confirmation have been overruled," (b) "§§ 1327 and 1330 accord significant finality to confirmation orders in Chapter 13 cases," and (c) "parties requesting modifications of Chapter 13 plans must advance a legitimate reason for doing so, and they must strictly conform to the [four] limited circumstances set forth in § 1329." *Barbosa*, 235 F.3d at 40, quoting *In re Barbosa*, 236 B.R. 540, 547, 548 (Bankr. D. Mass. 1999). Because "the

13

bankruptcy court's conclusions of law do accord significant finality to confirmed plans without requiring specific threshold tests not contemplated by the statute," the First Circuit in *Barbosa* "adopt[ed] the *Witkowski* approach as modified by the bankruptcy court and refrain[ed] from adopting the substantial and unanticipated test for seeking a modification pursuant to § 1329." *Id.*

The facts of this case underscore why *Barbosa*, in particular, but also *Witkowski* and *Meza*, contain the better analysis and *Arnold* and *Murphy*, with their rigidity, do not. In the case before this Court, the Debtor is not trying to modify her plan so she can have more favorable treatment. She is paying the same monthly amount to the trustee for the same number of months. The change in circumstances here necessitating relief is the post-confirmation allowance of $8,295 of attorney's fees that created the very distribution that unsecured creditors will get in this case, even at the lower amount in the modification. Not only is that a change in circumstances, but it is substantial one to this Debtor. The payment of those fees in addition to a $20,172 pool to unsecured creditors is not a burden this below median income Debtor on a fixed income should have to bear. Nor is it a burden her attorney should have to bear by forgoing his reasonable fee, particularly when it was the services giving rise to that fee that created the possibility of there being any distribution to unsecured creditors,. The approval of this modification is the correct result and it is within the permissible bounds of Section 1329.

This Court is aware that the Eleventh Circuit's decision in *In re Hoggle*, 12 F.3d 1008 (11th Cir. 1994), has been cited by at least one court for the proposition that a confirmed Chapter 13 plan cannot be modified absent a substantial and unanticipated change in circumstances. See *Meza*, 467 F.3d at 877. This Court disagrees with that interpretation of *Hoggle*. In *Hoggle,* the issue was whether a debtor could modify a confirmed plan to cure a post-petition default on mortgage payments, which payments were to be made directly to the lender, by making the cure

14

payments through the Chapter 13 plan. In holding that a debtor could modify the confirmed plan to cure the default in post-petition mortgage payments through the plan, the court began by engaging in the analysis of the language of Sections 1322 and 1329 and concluded that "[t]he plain meaning of Section 1322(b)(5) permits cure of any default whether occurring prior to the filing of the petition or subsequent to confirmation of the plan. Thus, Section 1322(b)(5) would permit cure of postconfirmation defaults." *Id*. at 1010. Even though the court concluded the plain language of the statutes permitted the result, it nevertheless analyzed the legislative intent and concluded that "permitting cure of postconfirmation defaults best accords with Congressional intent to permit homeowners to utilize its flexible provisions for debt relief without sacrificing their homes." *Id.*

Finally, after already reaching its result, the court in *Hoggle* continued and stated that "[t]he legislative history accompanying § 1329 also supports our interpretation. Congress designed § 1329 to permit modification of a plan due to changed circumstances of the debtor unforeseen at the time of confirmation." *Id.* at 1011. In *Hoggle*, because the Eleventh Circuit considered the post-confirmation default in mortgage payments by a debtor to be a changed circumstance of the debtor unforeseen at the time of confirmation, the debtor was permitted to modify the confirmed plan to cure the default through the plan.

No one disputes that Section 1329 permits the modification of a confirmed plan due to changed circumstances of the debtor unforeseen at the time of confirmation. But that does not require a holding that Section 1329 only permits a confirmed plan to be modified if the moving party can show changed circumstances that were unforeseen at the time of confirmation. If *Hoggle's* comment based on the facts before it and the legislative history of Section 1329 resulted in someone reaching the sweeping conclusion that Section 1329 actually imposes such a

15

threshold requirement for the modification of a confirmed plan – albeit a requirement this Court does not think the Eleventh Circuit actually imposed in *Hoggle* – this Court would note to them that *Barbosa* reviewed and commented on the same legislative history and reached the opposite conclusion.[7] As noted previously, Barbosa discussed legislative history which showed that the intent of Section 1329 was designed to "accommodate any changes in the financial circumstances of the debtor (either adversely or favorably), which substantially affect his ability to make future payments under the plan."[8] It is this flexibility to deal with a debtor's changing financial situation afforded by Sections 1322 and 1329 that is at the heart of *Hoggle* rather than the rigid application of judicially created requirements not found in the statutes. That flexibility is what is needed here and what the Debtor is entitled to under Section 1329. The allowance of the $8,295 of attorney's fees created a changed circumstance which substantially affected the ability of the Debtor here to complete the payments under her plan. Section 1329 provides a flexible, albeit not unlimited, remedy for such situations. Although "[l]egislative history helps us learn what Congress meant by what it said, …it is not a source of legal rules competing with those found in the U.S. Code." *Witkowski,* 16 F.3d at 743, quoting *Matter of Sinclair,* 870 F.2d 1340, 1344 (7th Cir.1989). Because the plain language of Section 1329 does not contain any threshold requirement for a modification, a court should "not use the legislative history to create a rule where none exists." *Id.* Accordingly, this Court will not impose any threshold requirements for the approval of a modification under Section 1329 that are not found in the statute; rather, the Court will apply the requirements of the statute and consider all matters of record in the case, including the reason for the modification, while according the appropriate finality to the confirmation order.

---

[7] *Supra*, note 5.
[8] *Id.*

16

**B.  Did the Proposed Modification Violate the Chapter 7 Liquidation Test?**

The next question is whether the proposed modification actually satisfies the best interest of creditors test found in Section 1325(a)(4).  The satisfaction of this test is one of the many requirements of a proposed modification of a confirmed plan pursuant to Section 1329(b)(1).  Although the Debtor proposed a pool to unsecured creditors of $20,172 based on the assumption that the Wells Fargo lien would be avoided, the parties dispute whether they took into account the attorney's fees that were incurred to reach that result.  The Chapter 13 trustee argues that the 10% cost of sale in a hypothetical Chapter 7 case of $22,180 that was deducted by the parties from the value of the house included the $8,295 awarded to Debtor's counsel.  The Debtor disagrees and the Court agrees with the Debtor on that point.

For decades, parties have often used a 10% cost of sale of residential real estate to determine the result of a typical, hypothetical Chapter 7 case.  It has always been this Court's understanding that this 10% cost of sale figure consists of (a) the commission paid to a real estate agent (which is usually around 6% on residential real estate) and (b) the Chapter 7 trustee's statutory fee under Section 326, which fee has historically been calculated on a variable percentage based on a sliding scale, with the percentage decreasing as the amounts disbursed increase, and which percentages were last increased in 1994.  See *In re Locklear*, 386 B.R. 911, 913, 914 (Bankr. S.D. Ga. 2007).  This Court believes this 10% cost of sale formula is a holdover from the time before the 1994 amendments so it is outdated.  For example, a Chapter 7 trustee's fee under the current formula on the first $100,000 disbursed is about 8%. *Id*. at 914.  Other costs of sale could also be included, such as real estate tax prorations and closing costs.  Because the fee does not go below 5% until the Chapter 7 trustee disburses more than $1,000,000, it would

17

seem that a 10% cost of sale would be on the low end of the hypothetical costs of sale in a Chapter 7 case and would require a real estate commission of 5% or less.

The attorney's fees incurred by debtor's counsel in this case are an additional expense over and above the typical costs of sale in a Chapter 7 case that must be taken into account in conducting a hypothetical Chapter 7 liquidation analysis in this case. When the initial plan was filed in this case on the petition date, Debtor's counsel did not even know if he would incur any fees until he got a response from Wells Fargo. These attorney's fees are expenses that were in fact incurred in avoiding the Wells Fargo lien and are expenses that would have been incurred by a Chapter 7 trustee if the house was going to be worth administering for the benefit of unsecured creditors in a Chapter 7 case. Wells Fargo did not consent to or have no opposition to the avoidance of its lien at the beginning of the case, but it affirmatively contested the relief sought, necessitating an adversary proceeding, discovery and the filing of a motion for summary judgment.

The methodology used by the parties as explained to the Court at the hearing on the approval of the modification would have been more appropriate if the Debtor and her spouse were joint debtors. The fact they are not joint debtors alters on what funds a Chapter 7 trustee could calculate his or her fee, so the Court will use a different methodology than that employed by the parties to determine whether the modification satisfies the best interest of creditors test. Starting with a value of $221,800, the Court will deduct 6% costs of sale for a real estate commission of $13,308, leaving a balance of $208,492. The Court will further reduce that amount by the actual amount owed on the first mortgage according to its proof of claim, that being $115,820, which leaves a net balance of $92,672. The non-debtor spouse is entitled to half of the net proceeds of the sale. This should be credited before the Chapter 7 trustee's fee is

18

calculated because the Chapter 7 trustee would not get a fee on the amount distributed to the non-debtor co-owner, so the non-debtor spouse here would receive $46,336, leaving a balance of $46,336. *In re Flynn*, 418 F.3d 1005, 1007 (9th Cir. 2005); *In re Eidson*, 481 B.R. 380 (Bankr. E.D. Va. 2012). The Debtor is entitled to an exemption of $21,500, thereby reducing the balance to $24,836. Once again, this amount must be credited before the Chapter 7 trustee's fee is calculated because a Chapter 7 trustee would not receive a fee on the amount paid to the Debtor. It is on this balance of $24,836 plus the $115,820 disbursed to the mortgage holder, a total of $140,656, that the Chapter 7 trustee would receive the statutory fee. Under the formula in Section 326, the Chapter 7 trustee's fee would be about $10,283, leaving a balance of $14,553. Because the attorney's fees of Debtor's counsel of $8,295 are an administrative expense of the estate that must be paid before unsecured creditors, the balance must be reduced by that amount, so the balance remaining to be distributed to unsecured creditors in a hypothetical Chapter 7 case would be $6,451.[9] Because this balance is less than the $11,877 to be distributed to unsecured creditors in the proposed modification, the proposed modification satisfies the best interest of creditors test.

Based on the forgoing, and after considering all matters of record in this case, the Court finds and concludes that the proposed modification satisfies all of the requirements of Section 1329(a) and (b). Accordingly, it is hereby

ORDERED that the modification proposed by the Debtor is approved.

**[END OF DOCUMENT]**

---

[9] The fact that the Debtor could have possibly confirmed a plan with a smaller pool to unsecured creditors does not necessarily mean that the Debtor could now successfully propose a modification to reduce the amount of the pool to that amount. All modifications must satisfy the requirements of Section 1329, which includes the good faith requirement of Section 1325(a)(3) and, as previously discussed, this Court will take into account all matters of record in a case to reach an appropriate result, which consideration would include, among other things, whether there are changed circumstances that justify the necessity for a modification in deciding whether to approve a modification.